Our third case is Sykes v. Experian. Mr. Shammy, whenever you're ready. May it please the Court, Your Honors, I'm going to reserve five minutes for rebuttal. The District Court granted Defendant Experian's motion to dismiss and essentially found that Experian was not required to understand the effect of a Chapter 13 discharge as it related to unsecured debt. The deficiency balance that existed on Ms. Sykes' consumer report was not debt related to a mortgage, and Experian knew that, so there was no unresolved legal question for Experian to resolve. Your Honors, Ms. Sykes had entered into an agreement with the lender, Community Loans, back in 2016 to surrender her property through a deed in lieu of foreclosure. The credit reporting agencies, including Experian, understood this. In fact, they have a status that they created called deed in lieu. They understood that the mortgage, the security interest that existed in that mortgage, was no longer valid and were reporting that as of 2016. Ms. Sykes doesn't enter into her Chapter 13 bankruptcy plan until two years later. Experian was sued in a nationwide class action in 2005 for ignoring the effects of bankruptcies on consumer credit reports, and after years-long litigation, they entered into a settlement agreement and agreed to implement a bankruptcy scrub related to Chapter 7 bankruptcies, all the while ignoring Chapter 13 bankruptcies, even though the presumption of discharge that consumers are entitled to following a bankruptcy applies in almost identical fashion to Chapter 13 discharges. Experian argued in the court agreed that somehow the bankruptcy code, 11 U.S.C. 1322b2, which accepts mortgages from discharge in the Chapter 13, somehow mattered in this analysis. Experian argues all the while, we can't figure out what it means, we can't adjudicate the effect of the bankruptcy code and the discharge, but that's exactly what they were doing when they were making the decision to treat mortgages- Why does that matter in this case? Well, you know, the district court found- It seems to me like what your argument, I think you said this, your argument is this is a basic application of law to facts, and we've said repeatedly that's exactly what Experian does not have to do. In other words, I mean, I guess, are you arguing that we should overturn precedent? Because what we've said is that the credit agencies do not have to put two and two together, and what you're saying is this is easier than two and two, it's one and one. It's the same argument that we've, I think, rejected in our precedent. Well, I disagree that that's what's happening here. This is an adjudicated fact, Your Honor. I guess I don't understand the alternative argument in the complaint then. I'm sorry? The alternative argument that's in your, I think it's paragraph 6768, that even if there was false information that the furnisher provided, inaccurate information regarding discharge debts, they had to, they were not permitted to blindly rely on that information. Yeah. Well, in this circumstance, there was no information provided to Experian from the furnisher. The furnisher stopped reporting in 2016. Experian made a determination, that's precisely what they did when they decided to continue to report stale information from 2016, showing $146,000 balance, past due balances, even though they understand, and every court that has considered it in the context of a Chapter 7, Your Honor, has said, this is an adjudicated fact. It is a determination of the law. Court has already rendered what it means as it relates to the debts. Experian doesn't have to figure it out. They have a duty under the FCRA to follow reasonable procedures to assure maximum possible accuracy. Experian seeks out bankruptcy information, Your Honor. They don't get it reported to them. They go out and collect that data. And then, in fact, in the context of Chapter 7s, understand, okay, if we're going to report maximum possible accuracy. Isn't the duty, though, to determine facts? You can't ignore court decisions. That's widely accepted across circuits. If a court has rendered somebody does not owe the debt, they've dismissed the claim without prejudice, Experian can't say, well, the furnisher is still arguing that you owe them money. No, a court has found that you don't. And if a court has found that you don't owe the money, Experian can't ignore that publicly available information that was already being communicated to it through its collection of bankruptcy data, Your Honor. They collected the bankruptcy discharge data. I think that's the argument, though, that, go ahead. Yeah, I'm questioning, is that not, you're requiring them to interpret it? Right. No, they already interpret. That's why they collect the data. And they are not interpreting the intent of the bankruptcy court. The intent is known. It's a discharge. It's determined. It's a discharge. They don't have to interpret it. They just have to understand it. Okay. Well, what's the difference between interpreting and understanding? I mean, that's the whole point. They report facts. Well, how could Experian achieve its obligation under the statute to report maximum possible accurate information about consumers if they simply can throw their hands up and say, we're not capable of understanding the intent or the purpose of this bankruptcy? They have a statutory obligation under 1681 AB. Tell us where in the record we see that it was discharged in bankruptcy. That fact. So, well, we reported the discharge and no discharges, whether it be under Chapter 7 or Chapter 13, identify the debts. It is the discharge automatically by operation of law, discharges all unsecured debt absent. That's the interpretation. I'm asking you to direct me to the fact that supports the conclusion in the complaint that they were on notice as a fact that this had been discharged. Well, your Honor, the fact that she obtained a discharge and the fact that the debt was unsecured and known to Experian to be unsecured because it was reported by the furnisher that a deed in lieu of foreclosure had occurred in 2016, which is a surrender of the property. There's no longer a security interest in that property. So is there any indication from that fact that she has received this deed in lieu? The indication is the reporting by the furnisher. You're telling me what the indication is. You're telling me what the interpretation is or what the understanding. Well, Experian creates the code, your Honor. The status of deed in lieu of foreclosure is a communication to furnishers. We want you to report this status code when property has been surrendered. Every single time somebody reports information to a consumer reporting agency, there is some interpretation of law. That's what you're reporting, consensual liens and debts, contractual obligations. When a furnisher tells Experian they owe $187 or $1,800, it is based on a contract, their understanding of interest and late fees and penalties that they add. And when those things are being communicated to it, Experian is rendering a determination, an interpretation or an understanding from the furnisher that this is correct. Before you get too close to your rebuttal time, why didn't Ms. Sykes pursue an investigation claim under 1681I? And is her argument asking us to do the work that 1681I was designed to do? So 1681I is designed to provide consumers a remedy and to protect the CRAs from having to comply with 1681EB when they don't have information to allow them to make that decision for themselves. So it is an option, but it is not required. The court should not be considering the rights that a consumer has under 1681I to dispute when determining whether or not the CRA had within its possession the information. If Ms. Sykes would have said, my debt was... You're talking about the credit reporting agency? Correct, Your Honor. If Ms. Sykes would have disputed and said it was discharged, Experian would have then had to make a determination as to whether it was discharged. We'd be in the same boat. They'd say, well, we don't know if it was discharged, we're not going to decide a legal issue. No, you did know it was discharged. The court said she got her discharge and Experian, Your Honors, independently reported the discharge. Again, the bankruptcy court did not communicate a discharge to Experian. They knew it because they gathered that data. So you're saying if she had... And I understand your position that 1681I, the lack of a... Using that avenue doesn't dictate the result here. But are you saying that had she pursued that, an investigation kind of dispute, there's nothing she would have supplied to Experian to prove her point that the debt had been discharged? No, because the discharge order does not identify any of the unsecured debts. It just says you've obtained a discharge. So providing a copy of the discharge order would not have helped Experian. They still would have been required to do an investigation and make a legal determination as to whether or not it applied or not. We'd be sitting here in the same exact boat, which is... Did you just say they'd be required to do an investigation to make a legal determination? I'm saying based on their argument that this is somehow a legal determination, we'd be in the same boat. They'd be saying, well, we can't decide. I'm telling the court, and I believe they had no obligation to make a legal determination under EB or I. It's already been adjudicated. What would have triggered the investigation? It would have required a dispute under I. 1681 EB is before we ever get to I. When they prepared the consumer reports that they sold about Ms. Sykes, they had an obligation to follow reasonable procedures to assure maximum possible accuracy, and that's the end of the analysis. Her ability to dispute is not pertinent to the issues before us. So I think Chulainn bought, Your Honors, and Chytoff both, first of all, acknowledge that if the information... There's always going to be some mix between law and fact. Let me try it a different way. What's your best argument that would have triggered an investigation? Well, again, I think Experian has a bankruptcy scrub procedure for Chapter 7 bankruptcies. They know the effect of a discharge. So for you, the answer to my question is the bankruptcy scrub procedures that they already have in place. Should have been put in place for Chapter 13s, 100%. And they have the ability to do it. They're already doing it for Chapter 7s, and if you want maximum possible accuracy, you should have the same procedure in place for Chapter 13s as it relates to unsecured debts, which they undoubtedly knew and was not a question of interpretation because they were reporting the deed in lieu of foreclosure. And I'll reserve my final three minutes. Okay. Thank you. Thank you. Mr. Johnson. Thank you, Your Honor. Jeff Johnson on behalf of Experian, and may it please the Court. Judge Kirch, I thought your opening question was kind enough to decide this case. And let me just quote to you from what Chulainn Batts says. The central question is whether the alleged inaccuracy turns on applying a lot of facts or simply examining the facts alone. In the beginning of this case, that wasn't disputed, that we were on the wrong side of that line for his purposes. Their opening brief, no less than five times, says that all that was required was a simple application of lots of facts. And again, I think this morning we heard toward the end there something of a confession, that what Experian was supposed to do was gather all this data, look at it, and then make a legal determination about whether or not the mortgage debt was discharged. So under Chulainn Batts, under Judge Kirch, your decision in Chaytoff, that I think just ends this case. The Seventh Circuit's case? Yes, both Chaytoff and Chulainn Batts are from this court. Not Kirch. I'm sorry. I apologize. He authored the opinion. Takes three of us. That's true. I apologize, Your Honor. What about the practical effects for Ms. Sykes? Because if a prospective creditor sees bankruptcy, discharge, and then also sees a six-figure mortgage balance on the same report, why isn't that somewhat misleading? So the court's case is distinguished between actionable inaccuracies and inaccuracies. So it could be that a legal conclusion is inaccurate and it would be misleading. And that's why it's not like she's left remedy-less. So, for instance, here's a few of the options. One, she could have disputed to Experian. When Experian receives the dispute, it forwards that along to the furnisher. And the furnisher, who this court has said repeatedly is best positioned to assess things like legal validity, will then take a look and say, oh, you know, in many cases they'll say, oh, we looked at it again. Actually, you're right. This was discharged. We got the deed in lieu. We're all set here. And they would have reported to us, take it off, please. We would have done so. She could have told whoever the creditors were that were upset about it. Actually, look, I got that fixed. It's all fine. If I say the furnisher screws up, then she can sue the furnisher for failing to adequately reinvestigate its reporting to Experian in that context. And then finally, the FCRA, the Fair Credit Reporting Act, allows consumers with disputes to submit a statement that says, I disagree with how the furnisher has responded to this investigation and how the credit reporting agency has responded to it. And that has to go onto the report, to the disclosure as well. And so there are multiple avenues that are available. And that's why I think it's interesting there was a discussion about, well, why not file the dispute? Why does it matter? And opposing counsel said, it doesn't matter at all in this case. I think that that's just not true under this court's case law. Whether in terms of accuracy or in terms of reasonable procedures, this court's held over and over again that it's not Experian's job to survey the universe of records, hire lawyers to figure out how likely it is or not that this particular kind of debt was discharged, proactively hunt for things like deeds in lieu of foreclosure, because you can't just know the fact there was a deed. You have to read its terms. You have to know if it was valid. Like in Chulinbath, there was assignments. And so this court has said it would be unreasonable to require credit reporting agencies who have to combine and assemble truly tremendous quantities of data to do all of that initially before someone raises their hand and say, actually, I think you got this one wrong. Will you please check and see that this was mistaken? And so I think it does very much matter that there was no dispute in this case. And it shows sort of what could have happened in here. The other response that we heard this morning to why this was actually actionable was that this has an adjudicated fact. And Judge Pryor, I believe you asked the question, will you please tell me in the record where is the adjudication of the fact that this debt was discharged? I did not see a cite to a bankruptcy court order that says the Bayview loan account was discharged. What I heard was the same combination of inferences that we heard before, which was, oh, well, if you combine the deed in lieu that we know about and you assume that it's valid and you assume that there's no remaining security interest anywhere else in the mortgage or anything like that, and then you combine the Chapter 13 exclusion rules and exemption rules, you say, oh, the anti-modification provision doesn't apply, and then we further assume that none of the other exceptions in Chapter 13 applies. So for instance, if someone lies in the context of their Chapter 13 bankruptcy, their discharge can be invalid. If they don't complete their planned payments in their Chapter 13 bankruptcy, their discharge can be invalid. So we have to assume all that kind of stuff, and that inference all combined makes it sort of more likely than not, it sounds like, that it was discharged, and that's what we're supposed to guess and determine and report, and if we do that wrong, we're under pain of damages. Now you're not reading, is it Deneen, Dean? The one about whether the loans were too usurious, I believe? Yes, you are not reading that to say that any time a credit reporting agency must look at a legal document, then there's no claim, should be no claim under the FTRA, because I'm wondering, if we're writing an opinion here, where are you suggesting the line is between when does a dispute involve just a legal judgment the credit reporting agency has to make versus some sort of fact that emerges from a legal document? So I think this court's decision in Chadoff is a good example of this, where there was the TPP, the payment plan, and there was a document that was provided that said, here's the payment plan, and he just wanted the credit reporting agency to report, no, actually, I was on a payment plan, and that was a different fact, and so it was adjudicated. In this case, if there was a question about it, you can go to a district court or a bankruptcy court and say, will you please issue an order that says this debt has been discharged and make that clear. So we, of course, are not saying that CRAs, excuse me, credit reporting agencies, are not able to read legal documents. Of course they can. What they're not required to do is to combine them all and then apply the law to figure out what their implications might be. So if the legal question has been liquidated through a court order, through a letter from the furnisher that says, actually, no, we agree this has been discharged, something like that, then, of course, those kinds of things are things that Experian can report on, but when it involves this kind of legal analysis that Judge Pryor and I were discussing, this court has held over and over and over again that that's not something that we are institutionally capable of doing, not something that the statute requires us to do. That leaves, there was a lot of discussion this morning about, well, Experian already does this for Chapter 7, why can't it just do it for Chapter 13? I think that ignores two things. One, even in the Chapter 7 context, it's true, we've agreed to an injunction in a 2005 case that does a bankruptcy scrub. If you read that decision, it says, you know, it's more likely than not that these things are discharged. You should just sort of assume that. And so it sort of itself shows that what we're doing here in that context is sort of making an illegal assumption. So I don't think that even in that context, you know, we're sort of beyond it. And then it just ignores the difference between Chapter 13 and Chapter 7 that make it much more likely that a Chapter 7 discharge will wipe out everything than a Chapter 13 discharge will. But again, I think all of that is sort of beside the point once we realize that the test from Chulainn back and Chadoff is straightforward, and plaintiffs have admittedly not been able to come out on the right side of it. If there are no further questions. No. Thank you, Mr. Johnson. Okay. Mr. Shamby, rebuttal. Thank you, Your Honor. Almost every, I don't think this court has adopted yet the objectively and readily verifiable standard that has sort of been the theme throughout the different circuits when it comes to the determination and whether it's objectively and readily verifiable. Interestingly in Davis, we cited the Davis versus Experian Ninth Circuit case, similarly in a Chapter 13 where Experian did the exact opposite. In the face of having active, actual credit reporting of monthly mortgage payments by the furnisher ongoing during the bankruptcy, Experian reported the consumer had a zero dollar balance and that the debt was discharged in bankruptcy, ignoring 1322b2, which is what they now argue, you know, tells them that mortgages should generally are accepted from a discharge. And the court in reversing the Ninth Circuit's, the district court's granting of a motion in that case said that further factual development is necessary to determine whether Experian understood the significance of the documents upon which it relied. And that's really what we're asking for here. This was a motion to dismiss. Experian's getting to come up here and tell the court, well, we're not capable and they could have disputed. No, they are capable. We should be allowed to explore their procedures and whether or not they understand the significance of a deed in lieu, which they reported, they gave the option of the furnishers to report and whether or not they understand the effect of a discharge, because they do understand it. They have applied it. It's not just on the basis of an injunction, Your Honor. We've sued Experian, my firm has sued Experian, hundreds of times across different jurisdictions. The Loesch Court in the Eleventh Circuit agreed with us, the Ninth Circuit agreed with us after Judge Carter, who issued the original injunction, dismissed our cases in California, three separate cases, and the Ninth Circuit said, no, your injunction from 2005 is not the law. The law is, does the discharge discharge debts or not, and it does, and should you know that, and should you be doing an investigation, should you be reporting discharges after a discharge happens, as it relates to unsecured debts? And the answer was resoundingly a yes, and that same process applies to Chapter 13s. There is no difference. There are exceptions to discharge in Chapter 7s. And the Chapter 7 process, remind me, it came out of litigation or it came out of legislation? Well, the Chapter 7 process came out of litigation. It was white, the white case. It was the white case in 2005, which ultimately led to the settlement in 2009, but there's been decades now of litigation as to their continued, and they've modified their processes as it relates to Chapter 7s, and continue to ignore Chapter 13s up until now. Okay. Thank you, Mr. Chambie, the case will be taken under advisement. Thank you.